**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Prentice Wheatley,                                                        Civil No. 12-880 DWF/AJB

                        Plaintiff,

v.                                                          <u>**REPORT AND RECOMMENDATION**</u>
                                                           <u>**ON MOTION FOR SUMMARY**</u>
Michelle Smith, Stephen Craane,                            <u>**JUDGMENT BY DEFENDANT**</u>
Keith Krueger, David Paulson,                              <u>**PHYSICIANS**</u>
Nanette Larson, Kathy Reid, Scott
Schantzen, and Jordan Buth,

                        Defendants.


                This matter is before the court, Chief Magistrate Judge Arthur J. Boylan, 300

South Fourth Street, Minneapolis, Minnesota 55415, on Motion for Summary Judgment and/or

Statutory Dismissal Pursuant to Minn. Stat. § 145.682 by defendants Stephen Craane, M.D., and

Keith Krueger, M.D.  [Docket No. 110].  Plaintiff Prentice Wheatley is a Minnesota state

prisoner incarcerated at the Minnesota Correctional Facility at Oak Park Heights, Minnesota.

The prisoner has filed a pro se second amended complaint for violation of civil rights under 42

U.S.C. § 1983 [Docket No. 91], alleging a claim of inadequate medical care in violation of the

Eighth Amendment and further alleging medical malpractice by the defendant doctors.

Specifically, Mr. Wheatley asserts that the physician defendants failed to promptly refer him for

examination and treatment by an appropriate medical practitioner, i.e. an ear, nose and throat

specialist ("ENT"), and these defendants failed to prescribe effective medication for chronic

pain.  He seeks compensatory and punitive damages along with declaratory and injunctive relief.

Defendants move for summary judgment dismissing the action on grounds that the plaintiff has

failed to establish a prima facie case for an Eighth Amendment violation and has failed to

provide necessary affidavits of expert review as needed to maintain a claim for medical

malpractice under Minnesota law.[1]

This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed below the magistrate judge concludes that defendant's motion for summary judgment should be granted and that individual capacity and official capacity claims against defendants Steven Craane, M.D., and Keith Krueger, M.D., should be dismissed with prejudice.

## Background and Claims

Plaintiff Prentice Wheatley was assaulted in his cell at MCF–Stillwater on August 11, 2011. Three other inmates entered Wheatley's cell while he was sleeping and caused injuries to his face and head, as well as knocking out three front teeth. Plaintiff suffered left eye socket fractures and eye inflammation, and alleges that he experiences chronic head pain and nerve and possible brain damage as a result of the assault. A skull x-ray was ordered by Dr. Virginia Mandac on the day of the assault,[2] and pain medication, Naproxen, was prescribed.[3] Three days later, on August 14, 2011, Mr. Wheatley was again assaulted by two inmates in the same cell block. On August 22, 2011, a CT exam was conducted which revealed the absence of much of the nasal bone structure and buckling of the left zgomatic arch (cheekbone).[4] These facial

---

[1] A separate motion for summary judgment by the remaining co-defendants, all of whom are Minnesota Department of Corrections personnel, represented by the Minnesota Attorney General's Office, is also pending before the court.

[2] Aff. of Andrea P. Hoversten, Ex. F, 155 [Docket No. 179].

[3] Id. at 156.

[4] Id. at 270.

fractures pre-dated the August 11, 2011, assault.[5] Dr. Mandac saw Wheatley on August 25, 2011, in regards to vision problems and pain in his left eye which he had experienced since the first assault.[6] He was referred to an ophthalmologist and prescribed ibuprofen.[7] The eye specialist, Dr. Lang, found no actual eyeball injury resulting from a recent assault.[8]

Defendant Dr. Stephen Craane saw Mr. Wheatley in regards to the August 11, 2011, assault injuries on September 7, 2011, in the prisoner's Administrative Control Unit ("ACU") cell at MCF–Oak Park Heights.[9] Wheatley reported decreasing left eye vision with ill-defined and blurring colors. He also had increasing pain and headaches around the eye, especially when doing activities such as reading, and he was experiencing discomfort related to the three broken teeth. Dr. Craane noted the results of the CT scan and the ophthalmologist's earlier findings. The prisoner was again referred to Dr. Lang to reevaluate the patient's vision in light of additional findings of worsening left eye vision and increasing pain around the left eye.[10] Wheatley was also referred to the dentist to reevaluate his fractured teeth. The prisoner was prescribed Lodine XL for pain after advising the doctor that canteen ibuprofen was insufficient and caused gastric upset.[11]

_____

[5] Second Aff. of Stephen Craane, ¶ 12 [Docket No. 114].

[6] Aff. of Andrea P. Hoversten, Ex. F, 88.

[7] Id. 157.

[8] Id. 504.

[9] Id. 89.

[10] Id.

[11] Id.

Dr. Lang saw Wheatley on September 9, 2011. The specialist evaluated the prisoner's eye condition and noted a history of ocular trauma and retinal detachment surgery to the left eye after a gunshot wound at age 15.[12] Dr. Lang reported a possible new blowout fracture to the left side that did not appear to affect extraocular motion, but suggested consultation with an ENT in regards to pain.[13] The status of plaintiff's sinuses and facial bones was the greater concern to Dr. Lang.[14] Upon examining the patient in ACU on October 5, 2011, Dr. Craane declined to do an ENT referral at that time.[15] Wheatley expressed concern about persistent pain and was taking Excedrin Migraine. Dr. Craane made another referral to an optician before determining further treatment.[16]

On November 1, 2011, Dr. Herbert Cantrill, VitreoRetinal Surgery, P.A., examined plaintiff with regard to the left eye. Dr. Cantrill advised Wheatley that there did not appear to be permanent damage to the eye, but suggested ENT consultation with regard to pain issues.[17] The prisoner was next seen by co-defendant Dr. Keith Krueger on November 10, 2011, in the ACU cell, primarily with regard to facial pain.[18] Dr. Krueger noted that Wheatley had used LodineXL which helped with facial numbness but did not relieve pain; he was taking Elavil

---

[12] Plaintiff's Mot. for Temporary Restraining Order. Ex. 3 [Docket No. 17].

[13] Id.

[14] Id.

[15] Id., Ex. 4. Clinic note dated October 5, 2011.

[16] Aff. of Andrea P. Hoversten, Ex. F, 97.

[17] Id., 567.

[18] Id., 98.

for chronic leg pain; and he had ibuprofen available to him in his cell.[19] Dr. Krueger did not prescribe any additional pain medication as plaintiff was not in pain at the time and obtained some relief by simply lying down.[20]

A prison nurse saw Wheatley on December 20, 2011, on complaint of headaches.[21] The nurse indicated that the patient obtained headache relief with Excedrin but he also had facial pain and pain in his thigh from an embedded bullet. Wheatley stated that he had been taken off Neurontin for pain due to abuse concerns, but that he could have Neurontin again after six months had passed.[22] The prisoner was referred to Dr. Craane who saw him in his ACU cell on December 28, 2011.[23] Wheatley reported improvement as to eye pain but no improvement in facial pain and continuing discomfort from the bullet in his left thigh.[24] He was presently taking Elavil for chronic pain but wanted to resume taking Neurontin.[25] Dr. Craane agreed to restart the patient on Neurontin, advising him that any misuse of the drug would result in permanent discontinuation.[26] Dr. Craane declined a request for sleep medication because it

---

[19] Aff. of Andrea P. Hoversten, Ex. F, 98.

[20] Id.

[21] Id., 211.

[22] Id.

[23] Id., 99.

[24] Id.

[25] Id.

[26] Id.

could only be prescribed by psychiatry staff.[27]  Wheatley was seen by a prison psychiatrist,

Kenneth Carlson, on January 9, 2012, for sleep issues.[28]  At that time the plaintiff did not

indicate any sleep problems, but stated that he would like to get Wellbutrin for anxiety, and the

pain issues had been resolved by Neurontin.[29]  Wheatley disputed a prior physician's report

which may have dissuaded other clinicians from prescribing Wellbutrin.[30]  Dr. Carlson found no

current indications of anxiety or sleeplessness.[31]  On January 10, 2012, Wheatley advised a nurse

that he could not sleep because of head pain, and he requested additional pain medication

because Neurontin was not for head pain and was not providing the needed relief.[32]

When Dr. Craane saw the prisoner on January 25, 2012, he was told that

Neurontin was providing relief for the left thigh pain, but not for facial pain.  Dr. Craane

increased the Neurontin dosage, advising him of risks of overuse, and provided paperwork for

referral to a chronic pain program.[33]  In a subsequent letter to Dr. Craane, Mr. Wheatley stated

that he continued to suffer head pain and felt that Tylenol 3 or other codeine product would

work.  An increase in the leg pain medication was also recommended by the prisoner.[34]

---

[27]  Aff. of Andrea P. Hoversten, Ex. F, 99. Id.

[28]  Id., Ex. F, 463.

[29]  Id.

[30]  Id.

[31]  Id.

[32]  Id, 212.

[33]  Id., 100.

[34]  Id., 95.

Meanwhile, a pain assessment form consisting of a patient section and a physician section was completed by Wheatley on February 22, 2012, and Dr. Craane on March 5, 2012.[35] Dr. Craane noted the plaintiff's discipline history for misuse of Wellbutrin and Neurontin,[36] and the physician completed a scoring form indicating that Wheatley was not a suitable candidate for long-term opioid analgesia.[37]

Pursuant to a March 8, 2012, examination at the MCF-OPH medical clinic, Dr. Craane re-evaluated the plaintiff's chronic pain issues, again noting that Neurontin provided relief for the thigh pain, but was ineffective for head and face pain.[38] The plaintiff expressed a desire to try Tylenol 3. He also reported worsening left side nasal and ear congestion for which he took Claritin and Chlor-Trimeton obtained from the canteen.[39] The physician's assessment included chronic facial pain, chronic left thigh pain, and chronic rhinitis.[40] Dr. Craane consulted with Dr. Cohen of the Health East Pain Clinic and started Wheatley on Cymbalta for chronic head pain, pursuant to Dr. Cohen's suggestion.[41] Dr. Craane also requested a neuropsych evaluation to consider reported memory lapses; prescribed an inhaler for nasal congestion; and

---

[35] Aff. of Andrea P. Hoversten, Ex. F, 90-93.

[36] Id., 92.

[37] Id., 94.

[38] Id., 96.

[39] Id.

[40] Id. The assessment also included left shoulder pain, possibly the result of injury incurred while performing push-ups, and pseudo-folliculitis barbae (barber's itch).

[41] Id.

requested a physical therapist evaluation for shoulder issues.[42]  In addition, the patient expressed interest in obtaining an outside evaluation of his chronic pain, as to which he was advised that he may do so, but only at his own expense.[43]

Dr. Craane next saw Mr. Wheatley in his ACU cell on March 21, 2012.[44]  It was noted that the plaintiff has started taking Cymbalta along with other medications, but both Neurontin and Cymbalta prescriptions were discontinued when the prisoner was caught diverting the medications by "cheeking" them, i.e. concealing pills in the mouth.  The physician also noted multiple previous incidents of attempted medication diversions by Wheatley, including attempts to divert Neurontin, Wellbutrin and Vicodin.[45] Seven Neurontin capsules, a Cymbalta tablet, and homemade alcohol had been found in the plaintiff cell on March 15, 2012.[46]

On April 19, 2012, Dr. Craane gave the prisoner an injection of Decadron (steroid) in his shoulder[47] for pain, possibly bursitis, resulting from doing pushups and side sleeping as reported in April 9, 2012, and April 16, 2012, consult notes.[48]  Wheatley was also switched from an Atrovent nasal inhaler to Vistaril for chronic rhinitis issues, and was given

---

[42]  Aff. of Andrea P. Hoversten, Ex. F, 96.

[43] Id., 101.

[44]  Id.

[45]  Id.

[46]  Id. 214-15.

[47]  Id., 103.

[48]  Id., 102, 222.

Tegretol for chronic facial pain, with a warning regarding diversion.[49]  Plaintiff was next seen by

Dr. Craane on May 16, 2012, in regards to the same conditions, at which time the dosages of

Tegretol and Vistaril were increased.[50]  On June 27, 2012, Mr. Wheatley was treated by Dr.

Craane for lesions on his scalp,[51] and the condition was substantially resolved by July 25, 2012.[52]


      In this action plaintiff Prentice Wheatley alleges that defendants Dr. Craane and

Dr. Krueger acted with deliberate indifference to his serious medical needs in violation of his

Eighth Amendment rights by failing to prescribe and continue adequate pain medications and

failing to make appropriate referral to an ear, nose and throat specialist.  It is further alleged that

such actions by these defendant's also constituted negligence and medical malpractice.

Wheatley has requested declaratory relief as to Eighth Amendment and negligence claims, and

he seeks injunctive relief requiring defendants to prescribe and continue effective pain

medications and to arrange for examinations by ENT and traumatic brain injury specialists.

Plaintiff also seeks compensatory and punitive damages.  Defendants Craane and Krueger move

for summary judgment dismissing claims against them, asserting that the plaintiff has failed to

establish a prima facie case of deliberate indifference to a serious medical need and has failed to

submit statutorily required expert affidavits as necessary to maintain an action for medical

negligence.

---

[49]  Aff. of Andrea P. Hoversten, Ex. F, 103.

[50]  Id.

[51]  Id., 104.

[52]  Id.

**Standard of Review**

  **Summary Judgment.** Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2553 (1986). In its review of the facts the court must consider the evidence in the light most favorable to the party opposing summary judgment. Kneibert v. Thomson Newspapers, Michigan, Inc., 129 F.3d 444, 451 (8th Cir. 1997). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 106 S.Ct. at 1355, n.11, Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995), Fed. R. Civ. P. 56(e). Evidence must be presented to defeat a properly supported summary judgment motion and a party may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 106 S.Ct. at 1356 (citation omitted).

**Eighth Amendment**

Plaintiff Prentice Wheatley seeks declarative determination as to a claim for failure to provide adequate medical care and treatment for serious medical needs resulting in unnecessary and unwanton infliction of pain constituting deliberate indifference in violation of the Eighth Amendment. As relief he seeks an injunction requiring that effective chronic pain medication(s) be prescribed and continued, along with participation in the prison chronic pain program, and that arrangements be made for examination by ENT and brain injury specialists, and their treatment recommendations be followed. Plaintiff further demands compensatory and punitive damages for physical and emotional injuries resulting from defendants' failure to provide medical care.

The complaint alleges that Dr. Craane and Dr. Krueger are sued in their individual and official capacities based upon conduct in violation of the Eighth Amendment. Allegations with respect to Dr. Craane relate to his actions as plaintiff's primary treating physician, and claims against Dr. Krueger relate to Krueger's attribution of plaintiff's facial condition to a prior gunshot to the eye, along with the physician's recognition of plaintiff's chronic pain and refusal to prescribe adequate pain medication. In support of summary judgment defendants argue that plaintiff's position merely represents disagreement as to medical treatment. Also, it is asserted that in stating his argument Mr. Wheatley has ignored evidence contrary to his position, misstates the reports of other medical treatment providers, and relies upon clearly distinguishable case law.

In order to state a cognizable Eighth Amendment claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106; 97 S.Ct. 285, 292 (1976); <u>Davis v. Hall</u>, 992 F.2d

151, 152 (8th Cir. 1993).  In the context of a claim of inadequate medical care, the prisoner must

demonstrate more than medical negligence.  <u>Givens v. Jones</u>, 900 F.2d 1229, 1232 (8th Cir.

1990).  The "deliberate indifference to a serious medical need must rise to the level of an

unnecessary and wanton infliction of pain."  <u>Jorden v. Farrier</u>, 788 F.2d 1347, 1348 (8th Cir.

1986).  A serious medical need is a need that has been diagnosed as requiring treatment or is "so

obvious that even a layperson would easily recognize the necessity for a doctor's attention."

<u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995).  Failure to treat a medical condition is

not punishment under the Eighth Amendment unless prison officials knew that the condition

created excessive risk to the prisoner's health and then failed to act on that knowledge.  <u>Dulany

v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997)(citing <u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir.

1996)).  Prison officials may exhibit deliberate indifference by intentionally denying or delaying

access to medical care, <u>Dulany</u> at 1239, but mere negligence is insufficient to rise to a

constitutional violation.  <u>Id.</u> (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05, 97 S.Ct. 285, 281-92

(1976)).  Importantly, when delay in treatment is the alleged constitutional deprivation,

seriousness of the deprivation is measured by the effect of the delay, and the claim must be

supported by verifying medical evidence in the record that establishes the detrimental effect of

the delay.  <u>Crowley v. Hedgepeth</u>, 109 F.3d 500, 502 (8th Cir. 1997)(citing <u>Hill v. Dekalb

Regional Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994)).  In order to survive

summary judgment plaintiff must present *prima facie* evidence to demonstrate (1) that he had

objectively serious medical needs and (2) that defendant actually knew of but deliberately

disregarded those needs.  <u>Dulany</u> at 1239 (citing <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir.

1997)).

With respect to plaintiff's Eighth Amendment claim in this case the extensive complaint and memorandum in opposition to summary judgment[53] each contain numerous fact allegations relating to the prisoner's requests for medication for unresolved head pain, and such requests are generally supported in the medical record, as well as in prisoner kites.[54]  However, the medical record also contains abundant evidence to establish that Mr. Wheatley was indeed prescribed medication to alleviate pain and which effectively refutes plaintiff's contention that Dr. Craane and Dr. Krueger were deliberately indifferent to a serious medical need or that their actions resulted in unnecessary and wanton infliction of pain to the plaintiff.

More specifically, and as previously described herein, plaintiff was promptly seen by a physician and was prescribed Naproxen[55] for pain after he was assaulted on August 11, 2011, at MCF-Stillwater.  He was subsequently seen by an ophthalmologist, Dr. Lang, and was prescribed ibuprofen.[56]  Mr. Wheatley first saw Dr. Craane on September 7, 2011, upon transfer to MCF-Oak Park Heights, and was thereafter again referred to Dr. Lang to reevaluate vision and pain issues, and he was also referred to a dentist.  At that time Dr. Craane prescribed Lodine

---

[53]  Second Amended Complaint [Docket No. 91] and memorandum of law in opposition to summary judgment [Docket No. 120].

[54]  Notarized affidavit of Prentice Wheatley with attached exhibits [Docket No. 121] and affidavit of Andrea P. Hoversten, Ex. F.

[55]  Naproxen is a nonsteroidal anti-inflammatory drug sold over-the-counter under various trade names, including Aleve.  PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, pp. 435-37.

[56]  Ibuprofen is a nonsteroidal anti-inflammatory drug used for pain relief.  It is available over-the-counter under various trade names, including Motrin and Advil.  PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, pp. 426-27.

XL[57] for pain after the patient reported that the ibuprofen was not sufficient and upset his stomach. Dr. Lang again saw the plaintiff and suggested consultation with an ENT, but the specialist did not make a referral.[58] In October, Mr. Wheatley reported persistent facial pain for which he was taking Excedrin Migraine. Dr. Craane referred him to an optician, Dr. Cantrill, who saw the patient on November 1, 2011, and found no permanent eye damage but an ENT consultation on pain concerns was again suggested. Dr. Krueger saw the plaintiff on November 10, 2011, and reported that Wheatley had used Lodine XL and was taking Elavil[59] for chronic leg pain and had ibuprofen available, but was not experiencing pain at that time. In December 2011, Dr. Craane allowed the prisoner to resume taking Neurontin[60] which he had been prohibited from using because of drug diversion. Dr. Craane warned Wheatley of consequences of misuse, including permanent prescription discontinuation. In January 2012, plaintiff saw a psychiatrist, Dr. Carlson, for sleep problems and requested Wellbutrin[61] for anxiety. The psychiatrist found no indications of anxiety or sleeplessness and no medications were prescribed. On January 10, 2012, Wheatley told Dr. Craane that Neurontin was relieving leg pain but not facial pain, and the

---

[57] Lodine is a nonsteroidal anti-inflammatory drug prescribed to relieve pain from arthritis and in other situations. PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, pp. 365-67.

[58] Plaintiff's Mot. for Temporary Restraining Order. Ex. 3.

[59] Elavil is prescribed for relief of depression, but is also used to control chronic pain and to prevent migraine headaches. PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, pp. 240-41.

[60] Neurontin is an epilepsy medication. PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, pp. 445-46.

[61] Wellbutrin is an antidepressant medication which tends to have a stimulating effect. PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, page 737.

physician increased the dosage, again advising of risks of overuse. Soon thereafter, the prisoner requested Tylenol 3 or other codeine medication. The request was denied based upon prior misuse of Wellbutrin and Neurontin. Following an examination on March 8, 2012, Dr. Craane consulted with Dr. Cohen of the Health East Pain Clinic. Cymbalta[62] was suggested and prescribed. Shortly thereafter the plaintiff's Neurontin and Cymbalta prescriptions were discontinued after he was again found to have diverted medications. In April 2012, Dr. Craane gave the plaintiff a steroid injection for shoulder pain and prescribed Tegretol[63] for facial pain.

The medical record in this matter persuasively shows that Dr. Craane was attentive to Mr. Wheatley's complaints of head and facial pain and made concerted efforts to treat such pain by medications as well as pain program referral and consultation with a pain specialist. Evidence with respect to Dr. Krueger is minimal at best except to indicate that he was not inclined to succumb to the plaintiff's manipulative efforts to obtain preferred medications. Plaintiff largely fails to address the multiple documented instances in which he was determined to have attempted and/or succeeded in diverting pills,[64] whether for later use, sale to other inmates, or for other purposes, and the practical affect of the diversions on maintaining a pain management regimen and finding alternative pain medications. Similarly, with respect to plaintiff's claim that Dr. Craane's failure to promptly refer him to a ENT specialist based upon

---

[62] Cymbalta is indicated for treatment of major depressive disorder, anxiety disorder, and neuropathic pain management. Physicians' Desk Reference, 62 Ed., 2008, Thompson Healthcare, Inc., pp. 1791-1793.

[63] Tegretol is used for treatment of seizure disorders and is also used to treat migraine headaches. PDR Family Guide to Prescription Drugs, 8th Ed., 2000, Three Rivers Press, page 564.

[64] Plaintiff did acknowledge being caught "cheeking" Cymbalta on March 15, 2012, and the discovery of medications and hooch in his cell. Mem. in Opp., page 32.

referrals made by three different eye specialists, Mr. Wheatley mischaracterizes comments by specialists as "referrals" even though no such referrals were made. Even if an ENT referral might have been prudent for diagnostic purposes, failure to make such a referral was clearly a treatment decision which does not approach the standards of deliberate indifference or unnecessary and wanton infliction of pain under the circumstances in this case. Indeed, plaintiff has provided essentially no evidence of any actual consequences he may have experienced as a result of actions or non-actions by Dr. Craane or Dr. Krueger other than the pain itself, and while the existence of chronic pain is not disputed, the severity of such pain is significantly belied by plaintiff's frequent diversions of such drugs.

Plaintiff Prentice Wheatley has not presented *prima facie* evidence to demonstrate an objectively serious medical need that either defendant Dr. Craane or Dr. Krueger actually knew of but deliberately disregarded as to either pain relief or ENT specialist referral. Dulany v. Carnahan, 132 F.3d 1234, 1239. Eighth Amendment claims against both physician defendants should be dismissed.

**Medical Malpractice**

It is not disputed that plaintiff's claim of medical negligence in this matter is subject to Minnesota law requiring expert review. Minnesota law pertaining to medical malpractice suits requires affidavits of expert review for the purpose(s) of establishing that the malpractice allegations have merit. Minn. Stat. § 145.682.[65] The statute first requires that

---

[65] Minn. Stat. §145.682 (2002) states in pertinent part:

> **Subd. 1. Definition.** . . . .

> **Subd. 2. Requirement.** In an action alleging malpractice, error, mistake,

or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and complaint an affidavit as provided in subdivision 3; and  (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

**Subd. 3.  Affidavit of expert review.**  The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that:

(a) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or

(b) the expert review required by paragraph (a) could not reasonably be obtained before the action was commenced because of the applicable statute of limitations.  If an affidavit is executed pursuant to this paragraph, the affidavit in paragraph (a) must be served on defendant or the defendant's counsel within 90 days after service of the summons and complaint.

**Subd. 4.  Identification of experts to be called.**  (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.  Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

(b) and (c) omitted.

**Subd. 5.  Responsibilities of a plaintiff as attorney.**  If the plaintiff is acting pro se, the plaintiff shall sign the affidavit or answers to interrogatories referred to in this section and is bound by those provisions as if represented by an attorney.

the complaint be accompanied by an affidavit by the plaintiff or his counsel stating that a qualified expert has reviewed the facts of the case and, in the expert's opinion, the plaintiff has been injured as a result of the failure by one or more defendants to meet the standard of care. Minn. Stat. § 145.682, subd. 3(a). Thereafter, within 180 days following commencement of the action, the plaintiff must produce either an affidavit of a medical expert, or an interrogatory response, therein identifying expert trial witnesses, the facts and opinions as to which the expert(s) will testify, and a summary of each expert(s) opinions. Minn. Stat. § 145.682, subd. 4. The penalty for failure to comply with the expert review requirements is mandatory dismissal. Id., subd. 6.

---

**Subd. 6. Penalty for noncompliance.** (a) Failure to comply with subdivision 2, clause (1) within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

(b) Failure to comply with subdivision 2, clause (2), results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case,

(c) Failure to comply with subdivision 4 because of deficiencies in the affidavit or answers to interrogatories results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case, provided that:

(1) the motion to dismiss the action identifies the claimed deficiencies in the affidavit or answers to interrogatories;

(2) the time for hearing the motion is at least 45 days from the date of service of the motion; and

(3) before the hearing on the motion, the plaintiff does not serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies.

Determination of whether the plaintiff is in need of medical treatment, describing the nature of the affliction and necessary treatment, and evaluation of the adequacy of a defendant's care are technical matters requiring expert review and opinion. See Paulos v. Johnson, 502 N.W.2d 397, 400 (Minn. App. 1993). The primary purpose for the statutory expert review requirement in a malpractice action is elimination of nuisance malpractice suits. Lombardo v. Seydow-Weber, 529 N.W.2d 702, 703 (Minn. App. 1995) (review denied). Obviously, a plaintiff's inability to obtain an expert affidavit might serve to validate the purpose of the statute.

Plaintiff acknowledges that he did not timely serve an expert affidavit required under Minn. Stat. § 145.682, but argues that the court should reconsider its prior denials of his requests for appointment of counsel to handle the Minnesota statute expert review requirements. A significant evidentiary difficulty facing the plaintiff in this instance is not only the failure to provide affidavits of expert review, but also the reality that there is no persuasive medical evidence in the record to indicate that the physician defendants failed to provide treatment that was medically necessary. Certain medications were prescribed, only to be diverted by the plaintiff for later or alternative use. Under these circumstances there are no reasonable grounds on which to hold the doctors accountable for not continuing the indicated medications, or prescribing stronger dosages or alternate drugs, and the court cannot find that appointment of counsel, or other court-financing of the litigation, is appropriate in the interests of justice.

With respect to the failure to refer plaintiff for examination by an ENT specialist, expert testimony would be required to establish both a medical need for the treatment sought by the plaintiff in this matter and a deviance from the standard of care based upon the defendant's

denial of such treatment.  See Sorenson v. St. Paul Ramsey Medical Center, 457 N.W. 2d 188, 191 (Minn. 1990) (citing Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163 (8th Cir. 1989)). Whether the failure to make an ENT referral can be recognized as evidence of negligence is not a determination that can be made solely on the basis of common knowledge and experience of a lay person, and without the benefit of expert testimony.  See  Tousignant v. St. Louis County, 615 N.W.2d 53, 58-60 (Minn. 2000).  In the absence of an affidavit of expert review and identification of an expert witness and summary of expert testimony, plaintiff Prentice Wheatley has failed to establish the applicable standard of care and any deviation from such standard of care and therefore has not alleged a *prima facie* case of medical malpractice.  With respect to allegations of medical malpractice or medical negligence, plaintiff's claims should be dismissed due to plaintiff's failure to submit the statutorily required affidavit of expert review, and dismissal is further mandated as a result of the failure to provide an affidavit of expert identification.

## RECOMMENDATION

Based upon the foregoing discussion, the magistrate judge **hereby recommends** that the motion for summary judgment by defendants Dr. Stephen Craane and Dr. Keith Krueger be **granted** [Docket No. 110] and that claims against these defendants be **dismissed** with prejudice.


Dated:    June 25, 2013    


 s/ Arthur J. Boylan                                    
Arthur J. Boylan
United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before July 2, 2013.