UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| PRENTICE WHEATLEY,<br><br>        Plaintiff,<br><br>v.<br><br>MICHELLE SMITH, STEVE HAMMER,<br>DAVID REISHUS, SCOTT SCHANTZEN,<br>STEVE McCARTY, MIKE McMAHON,<br>Sgt. ADAM MURPHY, VUTHY LONG,<br>DAVID PAULSON, NANETTE LARSON,<br>and KATHY REID,<br><br>        Defendants. | Civil No. 12-880 (DWF/AJB)<br><br>**REPORT AND RECOMMENDATION** |

    Prentice Wheatley, Minnesota Correctional Facility - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082, Plaintiff, pro se.

    Jackson Evans, Assistant Minnesota Attorney General, 445 Minnesota Street, Suite 900, St. Paul, Minnesota, 55101, for Defendants.

ARTHUR J. BOYLAN, Chief Magistrate Judge

    The above-named Plaintiff, Prentice Wheatley, is a Minnesota state prison inmate. He commenced this action by filing a complaint seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. The above-named Defendants have filed a motion for summary judgment, seeking to have this action dismissed pursuant to Fed. R. Civ. P. 56. (Docket No. 162.) The motion has been fully briefed by the parties, and the matter has been referred to this Court for a Report and Recommendation, ("R&R"), under 28 U.S.C. § 636 and Local Rule 72.1.

In a previous R&R in this case, (Docket No. 180), the Court recommended that summary judgment should be granted in favor of two other Defendants, Stephen Craane and Keith Krueger. That R&R, (hereafter "R&R-I"), was adopted by the District Court Judge, and Plaintiff's claims against those two Defendants have been dismissed. (See Order dated September 16, 2013, [Docket No. 196].)

In a separate R&R filed contemporaneously with the present R&R, the Court has recommended that summary judgment be granted in favor of eight of the present moving Defendants – Michelle Smith, Steve Hammer, David Reishus, Scott Schantzen, Steve McCarty, Mike McMahon, Adam Murphy and Vuthy Long. (That R&R will be referred to as "R&R-II.")

In this R&R, the Court will now recommend that summary judgment be granted in favor of three additional Defendants – David Paulson, Nanette Larson, and Kathy Reid.

## I. BACKGROUND

Much of the relevant factual background of this case has been presented in R&R-I and R&R-II, and need not be repeated here. Briefly summarized, Plaintiff has been incarcerated by the Minnesota Department of Corrections, ("DOC"), for the past several years. In August 2011, he was involved in two separate altercations with fellow inmates at the Minnesota Correctional Facility at Stillwater, ("MCF-STW"). As a result of those altercations, Plaintiff suffered several injuries, most notably to his face. A few weeks after the second altercation, Plaintiff was transferred to the Minnesota Correctional Facility at Oak Park Heights, ("MCF-OPH"). While Plaintiff was at MCF-OPH, he was examined and treated for the injuries he sustained at MCF-STW.

In 2012, Plaintiff commenced the present lawsuit, claiming that eight prison officials at MCF-STW violated his federal constitutional rights, by failing to protect him from the other inmates involved in the altercations mentioned above. The Court has recommended in R&R-II that those "failure to protect" claims should be dismissed. Plaintiff further claims that his constitutional rights were violated because he did not receive adequate medical treatment for the injuries he sustained during the altercations at MCF-STW. Plaintiff's medical treatment claims were brought against five additional Defendants – two prison doctors employed by a private corporation, and three prison administrators who supervise the medical care of inmates at MCF-OPH. Plaintiff's claims against the two prison doctors, Dr. Stephen Craane and Dr. Keith Krueger,[1] were dismissed pursuant to R&R-I. The matter is now before the Court on the motion for summary judgment motion brought by the three prison administrators – Defendants Paulson, Larson and Reid.

Defendant Paulson is a medical doctor. ("Affidavit of David Paulson, M.D., M.B.A.," p. 1, ¶ 2, Plaintiff's Exhibit BB, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, p. 92].) The nature and extent of Larson's and Reid's medical training is not fully explained in the present record. It is clear, however, that all three of the moving Defendants are employed by the DOC as administrators – not as "hands-on" medical care providers. Paulson is the "Medical Director for the Health Services Division of the DOC," Larson is the "Director for the Health Services Division of the DOC," and Reid is the "Health Services Administrator for MCF-OPH." (Defendants' Answer, [Docket No. 12], p. 3, ¶s 9-

---

[1] During the period of time when Plaintiff's present claims arose, Drs. Craane and Krueger were employed by a private company called "Corizon," which had contracted with the DOC to provide medical care to Minnesota state prison inmates.

11.)[2]

Plaintiff alleges that during the last four months of 2011 and the first few months of 2012, he frequently suffered severe pain in his face and head, which he attributes to the injuries he sustained during the two prison altercations in August 2011. (See Amended Complaint, [Docket No. 91], pp. 13-19, ¶s 96-Q, 102, 104, 106, 108, 110, 117, 125, 147, 156, and 163.) Upon Plaintiff's arrival at MCF-OPH, his medical care – including treatment of his complaints of head and facial pain – was overseen by Dr. Craane. The medical care provided by Dr. Craane is summarized in R&R-I, at pp. 3-9.

Plaintiff has alleged that the medical care provided by Dr. Craane was deficient in two specific respects. First, Dr. Craane allegedly failed to prescribe the proper medications that Plaintiff needed to relieve the pain in his face and head. Second, Dr. Craane allegedly failed to send Plaintiff to an ears, nose and throat ("ENT") specialist, even though at least two eye doctors had suggested that an examination by an ENT physician might be helpful. The Court has already determined that these alleged omissions by Dr. Craane did not violate Plaintiff's constitutional rights under the Eighth Amendment. (See R&R-I, pp. 13-16.)

Dr. Craane examined Plaintiff, and began offering medical care, within days after Plaintiff arrived at MCF-OPH. (See Amended Complaint, [Docket No. 91], p. 14, ¶ 101.)

---

[2] Dr. Paulson has explained that his "primary duties include evaluating complaints regarding medical care provided at DOC correctional facilities and monitoring the DOC's contract with its primary care provider, Corizon." ("Second Affidavit of David Paulson, M.D., M.B.A.," p. 1, ¶ 1, Plaintiff's Exhibit CC, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, p. 99].) Defendant Reid is responsible for the supervision of nurses at MCF-OPH. (Id., p. 2, ¶ 4.) The evidentiary record indicates that Larson is an administrator at the DOC's main office in St. Paul.

Although Plaintiff believes that Dr. Craane did not prescribe the right medications to treat his pain, the record shows that Dr. Craane was mindful of Plaintiff's pain – as well as Plaintiff's history of substance abuse[3] – and he treated Plaintiff's pain in a way that he believed was medically appropriate.  (See Fourth Affidavit of Stephen Craane, M.D., [Docket No. 194], p. 4, ¶ 10, ["I have addressed Plaintiff's complaint of left eye pain, including evaluating him, prescribing medications, consulting with an optician, and referring him for an evaluation by a retinal specialist"]; p. 5, ¶ 14, ["I have prescribed various medications to treat Plaintiff's complaints of chronic pain"].)  The record also shows that Dr. Craane determined – based on his own examinations of Plaintiff, and his own medical judgment – that referring Plaintiff to an ENT specialist was "not medically indicated or necessary," and "was not warranted."  (Id., p. 4, ¶ 11; Affidavit of Stephen Craane, M.D., [Docket No. 38], p. 4, ¶ 12.)

Plaintiff became dissatisfied with the medical care that he received from Dr. Craane, and in October 2011, he began filing administrative grievances, or "kites," in which he complained about his ongoing pain, and about Dr. Craane's alleged failure to provide adequate medical treatment for the pain. (Plaintiff's Exhibit Z, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, pp. 62-74].)  Many of Plaintiff's kites were reviewed by Defendant Reid.  (Id.; see also Amended Complaint, [Docket No. 91], p. 16, ¶ 121.)

---

[3] The record includes a note from a "psychiatric assessment" performed at MCF-STW in May 2011.  In that note, Dr. Darell M. Shaffer describes Plaintiff's efforts to obtain a prescription for a drug called "Wellbutrin."  Dr. Shaffer rejected Plaintiff's request for Wellbutrin, citing Plaintiff's history of drug abuse ("cheeking his meds" and brewing his own "hooch"), and observing that Plaintiff "appears to be an addict who is actively pursuing his addictions."  (Medical Record filed on August 26, 2013, [Docket No. 193-1], identified as "Exhibit H.")

5

Plaintiff also wrote two letters to Defendant Larson regarding his dissatisfaction with Dr. Craane's medical care. (Plaintiff's Exhibit AA, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, pp. 79-85; pp. 87-89].) The first letter, dated December 8, 2011, was answered by a DOC employee named Mike Hermerding. He informed Plaintiff that the grievances presented in his letter had already been raised in his recent kites, and the issues raised in his letter to Defendant Larson would not be addressed until the grievance (kite) process was completed. (Id., p. 86.) The second letter, dated December 22, 2011, was answered by Defendant Larson herself on January 7, 2012. (Id., p. 91.) Larson noted that Plaintiff's grievances about Dr. Craane's treatment had been fully considered during the course of the prison grievance process. She also reminded Plaintiff that Dr. Paulson had informed him that he was "on a proven pain medication." (Id.)[4]

Plaintiff alleges that he wrote a letter to Dr. Paulson in October 2011, in which he apparently complained about Dr. Craane's medical care. (Amended Complaint, [Docket No. 91], p. 16, ¶ 126.) In response to that letter, Plaintiff alleges, Dr. Krueger was sent out to examine him, apparently to provide a second medical opinion about Plaintiff's pain symptoms. (Id.) However, Dr. Krueger essentially corroborated Dr. Craane's evaluation

---

[4] The relevant part of Defendant Larson's response, in its entirety, is as follows:

"With respect to pain management, you have been through the grievance process and you have also heard from Dr. Paulson that you are on a proven pain medication. Grievance rules deem this a closed issue in terms of further internal complaint. That said, if your current medication does not manage your pain at acceptable levels, it is your right to continue working with the site physician to resolve your pain."

(Plaintiff's Exhibit AA, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, p. 90].)

and treatment of Plaintiff's pain.  (See R&R-I, pp. 4-5; see also Plaintiff's Exhibit Y, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, p. 59] [note by Dr. Krueger indicating "I suggested we proceed nonpharmacologically at this point"].)

Plaintiff later wrote a second letter to Dr. Paulson, which was answered in a letter dated December 22, 2011.  The content of Dr. Paulson's letter is as follows:

> "After receiving your letter, dated December 1, 2011, I reviewed your medical record and discipline reports.  Staff members have documented at least three instances of attempted medication cheeking or diversion in the past year.  Because of your actions, these medications were discontinued.  You were prescribed alternative medication that is a medically accepted treatment for chronic pain.
>
> Chronic pain is a condition that cannot be cured.  It is a condition that you must live with. You have had multiple examinations by different physicians, including specialists as well as x-rays and a CT scan.  None of these evaluations have identified a treatable or reversible condition.  These evaluations and tests as well as past and current treatments indicate that clinical providers have not been indifferent to your symptoms.
>
> Your current prescribed treatment is a medically accepted standard treatment for chronic pain.  In addition, the canteen has several pain medications available for purchase.  Other pain treatments include local application of warm or cold packs, exercise or stretching.  I encourage you to take advantage of these alternatives and to report any change in your condition to health services staff."

(Plaintiff's Exhibit BB, submitted with Affidavit of Prentice Wheatley, [Docket No. 172-3, p. 91].)

Plaintiff is now claiming that Defendants Reid, Larson and Paulson violated his constitutional rights under the Eighth Amendment, because they allegedly failed to treat his medical problems, namely the pain in his face and head that he experienced during the last four months of 2011 and early 2012.  (See "Plaintiff's Memorandum of Law in Opposition of State Defendants Motion for Summary Judgement," [Docket No. 170], p. 77.)  Plaintiff

obviously believes that Defendants Reid, Larson, and Paulson were constitutionally obligated to override the medical judgment of Plaintiff's treating physician, (Dr. Craane), and independently evaluate and treat Plaintiff's subjective complaints of pain. That notion is unsustainable.[5]

## II. STANDARD OF REVIEW

The standard of review for summary judgment motions is fully set forth in R&R-I and R&R-II, and will not be repeated here. Suffice it to say that "[s]ummary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." Dahl v. Rice County, Minn., 621 F.3d 740, 743 (8th Cir. 2010), citing Fed. R. Civ. P. 56(c)(2). Although the Court must view the evidence of record in the light most favorable to Plaintiff, he still has "the obligation to come forward with specific facts showing that there is a genuine issue for trial." Id., citing Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. DISCUSSION

The Court has previously described the general principles governing Eighth Amendment claims in R&R-I at pp. 11-12. Briefly summarized, a prison official can be liable for violating a prisoner's Eighth Amendment rights if the official has acted with "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976).

---

[5] It is unclear whether Plaintiff might be attempting to sue Defendants Reid, Larson, and Paulson for common law medical malpractice, as well as for allegedly violating his constitutional rights. However, any such medical malpractice claim would have to be dismissed for the same reasons that Plaintiff's malpractice claims against Drs. Craane and Krueger were dismissed. (See R&R-I, pp. 16-20.)

The Eighth Circuit Court of Appeals has explained that --

> "An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component.... [P]laintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."

Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted).

"A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995, quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993).

> "Medical malpractice alone... is not actionable under the Eighth Amendment.... [Citation omitted.] For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'"

Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008), quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

A prisoner cannot maintain an Eighth Amendment deliberate indifference claim simply because he disagrees with his medical treatment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) ("mere disagreement with treatment decisions does not rise to the level of a constitutional violation'"), quoting Estate of Rosenberg, 56 F.3d at 37. See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's Eighth Amendment claims were properly dismissed on summary judgment because they were based on "nothing more than mere disagreement with the course of his medical treatment").

As the Court of Appeals explained in Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996):

"[N]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). Prisoners do not have a constitutional right to any particular type of treatment. See id. at 327-28. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment. Taylor v. Turner, 884 F.2d 1088, 1090 (8th Cir. 1989); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994)."

With these standards in mind, the Court has reviewed the deliberate indifference claims that Plaintiff is attempting to bring against Defendants Reid, Larson and Paulson. The Court finds that Plaintiff cannot prove that any of these Defendants violated his Eighth Amendment rights, because the evidence in the record shows that they did not disregard Plaintiff's medical needs.[6]

The evidence in the record shows that Defendants did not ignore Plaintiff's complaints of pain. When those complaints were brought to their attention by Plaintiff's kites and letters, they determined – quite correctly – that Dr. Craane and the medical staff at MCF-OPH were aware of Plaintiff's concerns, and were addressing those concerns. (See R&R-I, pp. 3-7.) Dr. Craane was acting as Plaintiff's treating physician. He was the physician who was most familiar with Plaintiff's medical needs, he was in the best position to treat those needs, and he did, in fact, treat Plaintiff's needs. (See Fourth Affidavit of Stephen Craane, M.D., [Docket No. 194], p. 2, ¶ 4, p. 3, ¶ 8, p. 4, ¶s 10-11, p. 5, ¶s 12-14.)

---

[6] Defendants do not deny, (at least for purposes of their summary judgment motion), that Plaintiff's professed pain was a serious medical condition that satisfies the first, "objective," requirement of an Eighth Amendment claim. (See State Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, [Docket No. 163], p. 30.) The Court will likewise assume, for now, that Plaintiff's pain constitutes an objectively serious medical need.

10

The Court understands, of course, that Plaintiff was dissatisfied with the medical care provided by Dr. Craane.  However, the Court has already determined (in R&R-I) that Dr. Craane, as well as Dr. Krueger, were <u>not</u> indifferent to Plaintiff's medical concerns.  They provided Plaintiff with the medical care that they deemed most appropriate for his needs, and by doing so they met the federal constitutional standard.[7]  See Dulany, 132 F.3d at 1240 ("[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.")

As a general rule, prison administrators are entitled to rely on the diagnoses and treatment plans made by prison health care providers, such as Dr. Craane, Dr. Krueger, and the rest of the medical staff at MCF-OPH.  "When reviewing grievances about medical treatment, administrators are permitted to rely on the judgment of medical personnel." Blankenship v. Obaisi, 443 Fed.Appx. 205, 209, (7th Cir. 2011) (unpublished opinion). See also Heard v. Sheahan, 148 Fed.Appx. 539, 540-41 (7th Cir. 2005) (unpublished opinion) ("jail administrators like the defendants are generally entitled to rely on the judgment of medical professionals... because the question of whether or when a particular treatment is warranted is a 'classic example of a matter for medical judgment'") (quoting Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir.1996)); Estes v. Rahorst, NO.

---

[7] See R&R-I at pp. 15-16. The Court has specifically determined that "[t]he medical record in this matter persuasively shows that Dr. Craane was attentive to Mr. Wheatley's complaints of head and facial pain and made concerted efforts to treat such pain by medications as well as pain program referral and consultation with a pain specialist." Id., p. 15.

11

2:11-CV-0023 (N.D.Tex. 2013), 2013 WL 5422874 at *6 ("[d]efendant..., a clinic administrator, was entitled to rely upon the judgment of plaintiff's treating physicians and other medical professionals").

The Eighth Circuit has held that "[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical staff" regarding the proper treatment of a prisoner's health care needs. Holden v. Hirner, 663 F.3d 336, 343 (8th Cir. 2011). See also Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (because prison administrators "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision" regarding a prisoner's medical treatment); Dowty v. Waukazoo, No. Civ. 11-3025-RAL, (D.S.D. 2012), 2012 WL 4903664 at *9 (sheriff "who is not a medical professional, is entitled to rely upon the opinions of those doctors who are actually treating and trained to treat inmates").

The Court recognizes that the present Defendants seem to have varying degrees of medical training. However, as the Court has already pointed out, none of the present Defendants was directly involved in Plaintiff's medical care. There is no evidence suggesting that any of the present Defendants had any responsibility to examine Plaintiff, or prescribe a course of treatment for his medical needs. As previously noted, the present Defendants were not working as active ("hands-on") health care providers during the time period at issue here, but rather, all three Defendants were serving in an administrative capacity. The Court finds no good reason why Defendants should not be entitled to rely on the judgment and decisions of Plaintiff's treating physician, just like other "non-medical" prison administrators.

In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a state prison inmate sued a prison doctor, as well as a prisoner administrator – the prison's "Director of Medical Services," Kathy Bachmeier. Although Bachmeier was a nurse with medical training, "she was functioning in an administrative role" during the events at issue in the case. Id. at 849. The prisoner alleged that he needed a "CPAP," (a type of breathing apparatus), but the prison doctor refused to prescribe it. The prisoner sent Bachmeier an "inmate request," asking her to override the doctor's order and provide him with the CPAP, but Bachmeier declined that request. The prisoner then sued Bachmeier, claiming that she knew the doctor "provided inadequate care to inmates," she failed to object to the doctor's inadequate care, and she allowed the prisoner "'to continue to suffer when she had significant information that would bring her to the conclusion that something was not right." Id. at 847.

The district court denied Bachmeier's motion for summary judgment, but the Court of Appeals reversed that ruling. The Court of Appeals explained that –

> "Bachmeier was not responsible for examining [the prisoner] or treating him herself. Although [the prisoner] personally told Bachmeier about his condition and his need for a CPAP, Bachmeier relied on the opinion of prison doctors, who had more medical training, about the necessary treatment for... [the prisoner]. Bachmeier followed [the doctor's] order that a CPAP was unnecessary.... Bachmeier did not deny [the prisoner] access to medical care by prison doctors and medical staff, and did not interfere with that care or the prescribed treatment...."

Id. at 849 (emphasis added). The Court concluded that "[t]he law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision." Id.

This Court acknowledges that there could be rare situations in which even a layperson would recognize that a treating physician's orders were somehow plainly unsuitable for a prisoner's present medical needs, and following such orders could constitute deliberate indifference to a prisoner's obvious medical needs. In that type of unusual situation, even a purely administrative prison official could not blindly rely on orders that were patently inappropriate. See McRaven v. Sanders, 577 F.3d 974, 981 (8th Cir. 2009) ("[a] prison official may rely on a medical professional's opinion if such reliance is reasonable") (emphasis added).

In most cases, however, deferring to a treating physician cannot constitute deliberate indifference to a prisoner's serious medical needs. See Drake ex rel. Cotton v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006) ("it is not deliberate indifference when an official relies on the recommendations of a trained professional"); Liscio v. Warren 718 F.Supp. 1074, 1082 (D.Conn.1989) (prison official "cannot be found to have been deliberately indifferent to plaintiff's medical needs for failing to intervene in [treating physician's] course of treatment for the plaintiff;" prison officials "justifiably may defer to the medical expert regarding treatment of inmates/patients"), rev. on other grounds, 901 F.2d 274 (2nd Cir. 1990); McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D.Ill.1980) (deferring to the professional medical judgment of the doctors attending to a prisoner insulates prison officials from Eighth Amendment liability).

In this case, the Court has already determined that the medical care that Plaintiff received from his treating physicians did not violate his Eighth Amendment rights. It follows that Defendants Reid, Larson and Paulson were not deliberately indifferent to Plaintiff's medical needs when they declined to interfere with the care that Plaintiff was receiving from

his treating physician.[8]

Plaintiff has not shown (or even suggested) that any prison official or prison policy prevented Dr. Craane (or anyone else who was treating Plaintiff) from furnishing whatever medical care was deemed most suitable for Plaintiff's needs. Defendants Reid, Larson and Paulson did not prevent Plaintiff from gaining access to any health care services at MCF-OPH. They did not impede the course of treatment prescribed by Plaintiff's treating physician, nor did they interfere with any examination, procedure, medication, or other medical care recommended by Plaintiff's treating physician.

In this case, as in Meloy, the prisoner-plaintiff is claiming that prison medical administrators violated his Eighth Amendment rights by declining to countermand the judgments, decisions and directions of a treating physician. Here, as in Meloy, that claim must be rejected. Plaintiff is unable to show that Defendants Paulson, Larson and Reid ignored or disregarded his medical needs. Defendants considered Plaintiff's grievances, and they determined that the health care professionals at MCF-OPH, including Dr. Craane, were aware of Plaintiff's medical concerns, and were responding to those concerns.

In sum, based on the evidence in the present record, no reasonable trier of fact could find that any of the three present Defendants was deliberately indifferent to Plaintiff's

---

[8] The Court notes, in particular, that Plaintiff's treating physician specifically decided that Plaintiff should not be referred to an ENT specialist, even though other health care professionals had suggested that such a referral might be useful. (Affidavit of Stephen Craane, M.D., [Docket No. 38], p. 4, ¶ 12; Fourth Affidavit of Stephen Craane, M.D., [Docket No. 194], p. 4, ¶ 11.) The Court believes that the present Defendants were not constitutionally obligated to override that medical judgment by Plaintiff's treating physician. See Dulany, 132 F.3d at 1240 (prisoner "allege[d] that prison officials failed to follow the recommendations of her outside consultants, but a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment").

medical needs. Thus, the Court concludes that Plaintiff's Eighth Amendment claim against Defendants Reid, Larson and Paulson is unsustainable, and those Defendants are entitled to summary judgment.[9]

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion for summary judgment, (Docket No. 162), be **GRANTED** in favor of Defendants David Paulson, Nanette Larson, and Kathy Reid; and

2. Plaintiff's claims against Defendants David Paulson, Nanette Larson, and Kathy Reid, be **DISMISSED WITH PREJUDICE**.

Dated: January 6, 2014

    s/Arthur J. Boylan
ARTHUR J. BOYLAN
Chief United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before January 21, 2014.

---

[9] Having determined that none of Plaintiff's § 1983 claims is sustainable, the Court will not specifically address Defendants' qualified immunity defenses. See Holden, 663 F.3d at 343 ("[b]ecause we conclude Holden failed to demonstrate the deprivation of a constitutional right, we do not discuss further the prison officials' claim of qualified immunity").